Delafield
v.
Hand.

## Delafield *against* Hand.

Copies of the proceedings or decrees of foreign courts or tribunals, though under the hands and seals of the officers of such courts, are not, of themselves, evidence, but must be proved like other facts. The delivery of a paper by a plaintiff, in an action on a policy of insurance, to a broker, to enable him to adjust a loss, will not make that paper good evidence in another suit, brought by one of the parties, against the master of the vessel insured.

* 1 *Caines,* 573.

THIS was an action of *assumpsit.* The declaration contained two counts, for money had and received to the use of the plaintiff, and for money paid, &c. Plea, *non assumpsit.*

At the trial, the plaintiff proved that he was an insurer for 1,000 dollars, on the *freight* of the ship *Sophia,* of which the defendant was master, and owner of one-third, on a voyage from *New-York* to *Havre de Grace,* in *France,* in the year 1801 ; that the ship, having performed eight-ninths of her voyage, was captured and carried into *Ramsgate,* in *England,* in *September,* 1801, and remained there several months, when she was liberated, with her cargo, and proceeded to *Havre.*

The plaintiff then called for an exemplification of certain proceedings of a tribunal at *Havre,* and the defendant produced a translation (admitted to be correct) of those proceedings, without any other evidence of their authenticity, than what appeared from the papers themselves. The defendant objected to the reading of them, but the plaintiff proving that the same translation had been put into the hands of *John Ferrers,* a broker, by *Elisha Leavenworth,* in certain suits brought by *Leaven-worth* against the present plaintiff, on policies of insurance on the same vessel, for the same voyage, in order to an adjustment of the average loss,* the judge admitted the paper.

This paper contained a history of a suit instituted before the tribunal of commerce at *Havre,* by the present defendant, against citizens *Begouen, Demeaux & Co.* merchants and consignees of the cargo of the ship *Sophia,* for the freight of the cargo, to the amount of 7,520 52-100 francs. The consignees resisted the demand, on the ground, that part of the goods were not delivered, and

part were injured by bad stowage. The captain alleged, as an excuse, that part of the cargo had been stolen, while the ship was in *England*, and produced his three protests, the first of which stated that the vessel was captured, and carried into *Ramsgate*, in *England*. The second, made on the 18th of *January*, 1802, stated a robbery, about the 1st of *November* preceding, while the master was gone to *London*, to obtain the release of the vessel, and which, he had reason to believe, was committed by two of the officers of the vessel, as, on being questioned concerning it, they absconded : and that the ship was released on the 22d of *December*. The third protest was on the 8th of *February*, 1802, and stated, that the ship having been detained at *Ramsgate*, by contrary winds, a second robbery was discovered, on the 1st of *February*; that he applied to the magistrates of the place, and took measures to discover the persons who had stolen the goods ; and suspecting three of the crew, they were examined before a magistrate, and were discharged ; that he consulted with the merchants in *London*, as to further steps to be taken to discover and apprehend the plunderers, but they advised his departure, without prosecuting the inquiry further. The court holding the captain of a ship answerable for the acts of his crew, and that the second theft was committed by the crew, or arose from their negligence, and that some of the goods were badly stowed, adjudged, that the captain was answerable for the second, though not for the first theft. The value of the goods lost by the first theft was 774 1-12 francs, and by the second theft, 5,218-60 francs. The consignees were adjudged to pay 7,520-52 francs, according to the demand of the captain, but 504-14 francs, were directed to be deducted from the amount of the freight of the goods not delivered, which reduced the judgment to 7,016-38 francs. The captain and the ship were adjudged to pay to the consignees, for the goods stolen, and for the damage of goods badly stowed, 5692-60 francs,

ALBANY,
August, 1808.

Delafield
v.
Hand.

and this sum was deducted from the demand of the master for freight.

The defendant then read in evidence the three protests above mentioned.

It further appeared, that *Elisha Leavenworth* owned two-thirds of the *Sophia*, and had brought suits against the defendant, as insurer on the freight and vessel, for himself and the present defendant, and that the present plaintiff was compelled to pay to *Leavenworth* the full amount of his two-thirds of the freight insured, or 220 dollars 23 cents more than he would have been liable for, if the full amount of the freight of that part of the cargo delivered at *Havre*, had been accounted for and allowed him in the adjustment,

The plaintiff contended that the defendant could not charge the value of the goods stolen to the insurers on the freight, and was himself answerable for the theft.

A verdict was taken for the plaintiff by consent, for 251 dollars 43 cents, being the principal and interest, subject to the opinion of the court, the judge being of opinion, that if the plaintiff was entitled to principal, the interest ought to be allowed,

The cause was argued by *Pendleton*, for the plaintiff, and *Riggs*, for the defendant.

As the court decided on a preliminary objection, as to the admissibility of the written evidence, it is unnecessary to state the arguments, at length, on the merits of the case.

It was contended, on the part of the plantiff, 1. That the decision of the tribunal at *Havre*, as to the liability of the master for the goods stolen, was correct; and that the master, having applied a part of the freight to make good the loss, the owner was liable for the amount so applied to the insurer on the freight, who had paid a total loss.

2. That the insurer on freight, could in no event, be affected by a loss of the goods; for as the goods had arrived at their port of destination; the freight ought not to have been made liable for the goods stolen or lost.

The counsel for the defendant insisted, that from the time of the capture until the restoration of the vessel, she must be considered as under the restraint of a superior force, during which the master was not liable for any accidents, until the vessel was again on the high sea ; that the law relative to common carriers was not applicable to the case of a vessel so detained by a belligerent ; that if the owner of the vessel, or master, were liable for the loss to the owner of the goods stolen, still the *insurer* could not maintain this action ; and if he could, he ought to have made the claim when the action was brought against him on the policy of insurance : That an action for money had and received to the use of the plaintiff could not be maintained, unless it was shown that the money had actually been received by the defendant, which was not the case here, and there was no evidence that any money was paid to the defendant.

That the translated copy of the proceedings and decree of the tribunal at *Havre*, not having been proved or authenticated in any manner, was wholly inadmissible ; that it would be a most loose and dangerous practice to allow copies of the proceedings of foreign tribunals to be evidence of themselves ; and that the mere putting of the paper into the hands of a broker, by the plaintiff, in another cause, could not make it evidence in this suit, between different parties.

YATES, J. delivered the opinion of the court. This is an action for money alleged to have been received by the defendant, in consequence of an adjudication of a *French* tribunal, and claimed by the plaintiff. The propriety of the remedy now sought for, may, perhaps, be controverted on legal grounds ; but a preliminary question arising, the determination of which, in the opinion of the court, renders such inquiry unnecessary, I shall proceed to examine the question, whether an exemplification of certain proceedings of a tribunal at *Havre de Grace*, and objected to, on the trial, was legally admitted in evidence.

ALBANY,
August, 1808.

Delafield
v.
Hand.

It is undoubtedly a general rule, that every country recognises the seals of its own tribunals, without any further proof accompanying them. The reason is evident, because it is taken for granted, that the seals of those courts are of such public notoriety, as to carry with them intrinsic evidence of their verity. This doctrine is recognised by *Gilbert*, in his *Law of Evidence*, (p. 16.) where it is called, by him, a part of the constitution of the courts.

Among the acts of public officers abroad, those of a notary public are, perhaps, the only acts partaking of such universality, as to be generally received in courts of justice. The liberal extension of the rule of evidence in this instance, the intercourse between merchants has rendered indispensable.

The evil consequences resulting from the doctrine contended for on the part of the plaintiff, are too evident to require many observations to evince the impropriety and danger of receiving the attestations of foreign tribunals in evidence in our courts. Of what notoriety can such a seal be in this country? The extension of the rule insisted on by the plaintiff, would open the avenues of fraud and imposition, in our courts, and, in many cases, prove ruinous to parties. How easily might fabrications of foreign records be successfully introduced, without the prospect of detection within a reasonable time, and often leave the party without a remedy? For these reasons, we think that such attestations should be received by the court, as other matters of fact, and subject to the same rules of evidence. This rule was fully established in the case of *Simmerton* v. *Goddard*, (9 *Mod.* 66.) and in the case of *Henry* v. *Adey*, (3 *East*, 221.)

But it is stated, that the plaintiff proved that a translation of the proceedings of the tribunal at *Havre de Grace*, produced in court as evidence, had been put into the hands of Mr. *Ferrers*, the broker, by the plaintiff in certain suits commenced against the present plaintiff and others, in order to make an adjustment pursuant to the determi-

nation of the court in those cases. This, it is said, ought to preclude all objection on the part of the defendant in this cause. It does not appear, from this testimony, that such a privity exists between *Leavenworth* and the defendant, as to conclude him from making the objection. *Leavenworth* was not his authorised agent ; besides, if that were the case, I cannot discern why a delivery of a paper in one cause, should be deemed to conclude a person from objecting to its authenticity in another action. This testimony, therefore, does not remove the legal objection to the admission of the record of the *French* tribunal. As this decree appears to be the basis of the plaintiff's action, it is not now necessary to inquire what would be the effect on his right of recovery, if it had been authenticated by legal proof. The verdict having been taken subject to the opinion of the court, a nonsuit must be entered.

THOMPSON, J. not having heard the argument in the cause, gave no opinion.

<div align="center">

Judgment of nonsuit.