The opinion of the Court was delivered by
Duncan J.
The warrant which gave rise to .the controvery, issued from the land office, on 27th June, 1773, in the name of Robert ^Chancellor.
The plaintiffs claim an undivided half part of the land surveyed on it, under the will of their father, John Foster, who they allege took up the land, and agreed with Chancellor that he should take out the warrant in his name, arid that. Foster should have one-half, for locating the lands ; a very common custom, at that day.
The defendants claim the whole under a convéyance of 15th April, 1796, from Robert Morrison devisee of Robert Chancellor to Thomas Matthews.
The plaintiffs gave in evidence articles of agreement of 7th August, 1773, between Robert Chancellor and John Foster, by which it was covenanted that Nosier should have one-half the tract for locating it, and Chancellor the other half for taking out the warrant and surveying it. And they gave in evidence the will of John Foster, dated 10th February, 1786, by which he devised this tract- to the plaintiffs, and directs “ that part 'of said tract that is the property of Robert Chancellor, I allow to be purchased at the expense of my son James” to whom he d.evised other lands.
They then offered in evidence, a letter of 24th June,*1773, from David Kennedy, a confidential clerk of the secretary of the land office, to John Foster, in which he states “ that it did not suit- him to advance the money on his location adjoining Glover’s, but had given it to the bearer, Robert Chancellor, who had taken out a warrant for it, and given an agreement to convey to Foster one-half.” Having first given in evidence the original application taken fporn the files in the secretary’s office and proved it to be in the hand writing of John Foster, except the interlineation, John Foster’s name scored, and Robert Chancellor’s substituted, which was the hand, writing of David Kennedy.
At the foot of the application is a note in the hand writing of David Kennedy, and signed D. K., in these words ; “ John Foster sent down to take out a warrant for the half, but it *160 did not suit me to advance the money, I gave it to the above young man.”
The letter was rejected and exception taken.
In questions respecting the beneficial interest in warrants where the names of others are so generally used, the strict rules of evidence have been relaxed. The hand writing of the original application, indorsements on it, surveying fees paid, accounts in the office of deputy surveyor charging the fees for surveying, and other acts of ownership, have been received in evidence to indicate the real application.'
The rule of the land office which then obtained, that a person could not be permitted to take out a warrant or location for more than 300 acres, was probably first introduced to prevent the engrossing of large bodies of land, and perhaps was continued afterwards for the emolument of the officers. But it is well known that in general the name of, the warrantee was merely nominal, and used as a kind of scaffolding to build up a regular and formal title. This rule rendered from necessity these circumstances admissible as evidence of ownership,
This letter alone, standing by itself, would be very questionable evidence, but accompanied as it is, with the original .application and memorandum filed in the office, it affords satisfactory evidence that Kennedy acted as the agent of both parties when he substituted the name of Chancellor for Foster, and made the agreement with Chancellor ; and the subsequent ratification' of this agreement by the correspondent covenants of the parties j all these taken together form irrefragable evidence of the interest which Foster and Chancellor held in the warrant, and the lands to be surveyed on it, and ought all to have been received in evidence.
The defendants were permitted to give in evidence, the exemplification of a deed poll purporting to be a conveyance from Robert Chancellor to James Foster, and his heirs and assigns, of his whole right, title, and interest in the warrant. It was not offered as a genuine deed, but as a fabricated instrument. Plaintiffs disclaimed it, and excepted to its admission. •
This paper could not be evidence in any way, unless to affect the plaintiffs with fraud, and an abandonment of all claim under their father. But if it could be evidence for this *161 isr any other' purpose, their participation in the fraud and forgery should have been shown in evidence. This was not attempted. If James Foster whose own estate was charged with purchasing out at his expense, for the use of hi$ own brothers, the plaintiffs, the part of the tract which was Rohert Chancellor’s, forged this deed,. I cannot see why this should strip them of their father’s part under the original agreement with Chancellor. Even had the forged deed been direct to them, if it was prepared and manufactured by James, who was to make the purchase' for, them, it ought not to prejudice them; much less reason is there that it should do so, where it is not to them or in trust for them, but to James, and his heirs and his assigns in absolute property. How could it be material to the issue ? Why should this forged deed be.put on them, they forced to claim, nolens Dolens, under a spurious and false^deed, when they held a true one.
It is a just and wise maxim of the law, that nothing irrelevant to the issue should be received in eviden.ee. . It not only tends to the great delay of the public business, but has a more mischievous tendency, to bewilder the jury, and draw their attention from the rights of the parties, and fix it on some, extraneous matter ; on the acts and conduct of third persons, which though they might benefit, ought not to injure the parties. Here the intention of the jury would be occupied with the attempt of James to defraud Chancellor of the whole, and attaching this fraud to John and William, might fill them with indignation, and render John and' William the victims of their brother’s fraud, a fraud injurious as well to them as to Chancellor. \ ■ "
The evidence ought not to have been admitted.
The Board of Property has no legitimate power to vacate a pate.nt on the ground that it had been obtained by a forged conveyance. Their authority is confined to cases of imperfect titles, warrants, locations, rights of preemption, promises, 2 Smith 13, Act of 5th April, 1782. But this body possesses no judicial power. It is for them to say in the first instance to whom the patent shall issue.. But this does not decide the rights of the claimants. It is open to them for trial by jury as if no decision of the board had been made. But they can issue no scire facias to repeal a patent, to *162 call in and cancel one patent and issue another. The Legislature have conferred no such power on them. This proceeding was a mere nullity, coram non judice,and the minutes not evidence of any thing. Independent of this radical objection to the proceedings, it was exposed to others ; it was not a final order,- in was ex parte, in which i.t was not contemplated to bring in John and William by notice to be -served. This interlocutory order", ex parte, and hot warranted by any law, ought not to have gone to the jury. It was all excess of authority ; for when a patent is issued, their, power is at an end; they .have performed their business. For if they possessed authority to condemn and cancel a patent, this condemnatory power would be the exercise of the highest judicial authority, higher than exercised by the highest judicial tribunal in this State, and be conclusive on the rights of the parties, and without review and without appeal, giving it an effect greater than a verdict and judgment in ejectment, which is but a possessory remedy, its whole object - to put the party in possession ; for in truth and substance, a judgment in ejectment is a recovery of possession, without prejudice, to the right, however it may appear afterwards. Even between the parties, he. who enters under it, can only be possessed according to his right, prout lex prostulat; if he has, a freehold, he is in of a freehold; if a chattel interest, he is in as a termor; his "possession varies according to his right, and if he has no title, he is in as a trespasser. Taylor Lessee of Atkyns v. Horde, 1 Burr. 113.
The record of the Supreme Court, was clearly evidence for the purpose for which it was offered . It was introductory to other evidence to prove that .a witness who was examined on the trial, gave the same evidence he did in this ; to'corroborate his credit which had been impeached by testimony of inconsistent statements made by him. But the notes of Judge Ye ates of what the witness swore at th£ former trial, ought not to have been received for any purpose, either toTorroborate or contradict what he on this trial testified, or as evidence in chief. This question was’ fully considered in Miles v. O'Hara, 4 Binn. 108. It is not to •be distinguished in principle from this. The death of the Judge cannot stamp his notes with- higher credit than they possessed at his death. They were rejected on the ground *163 that no man could be heard without oath ; for however elevated the station of the officer may be, his verification must be on oath, unless where the law directs him to do an official act, for there it receives ,his certificate as sufficient evidence of the act being done. This holds as well in the case of judicial officers, as all others. The taking notes of evidence is not an act required by any law, and therefore his certificate or notes are no'evidence that they contain the truth. It is not evidence on oath. In giving evidence of what a witness swore at a former trial, great strictness is required as to the very words uttered by him. Yet I do not give any opinion how far a case of necessity might justify in a civil action the admission of a deceased Judges’ notes, as a long acquiescence in a former verdict, the death of the juror, a sedulous inquiry without effect to procure living testimony, when the trial was between the same parties and privies.
The deed of 15th April, 1796, from Morrison to Thomas Matthews, proved by one of the subscribing witnesses to have been executed in Ireland, and certified by the sovereign of Belfast, under the seal of the corporation, was received in evidence without any evidence of the seal. A c'onvéyance executed out of the State, proved by one of tíí,e subscribing witnesses before any mayor or chief Officer of the cities, towns or places, where such conveyance is executed, and certified under the common or public seal, such probate so certified, is made valid as if proved in the county where the land lies, by Act of 23d May 1715. 1 Sm. 94.
The seals of all public Courts established here, are received in evidence, without extrinsic proof of the genuineness; but the seal of a corporation whether 'foreign or domestic ought to be proved by a witness acquainted with the impression. It is not however required to prove the seal of a corporation in the same manner as the seal of an individual, that is, by producing a witness who saw the seal affixed to the identical instrument. But where a seal purports to be under the seal of a corporation, it will be sufficient to show that the seal is_ the official seal of the corporate body. Phil. Evid. 290. And such was the opinion of this Court with respect to the corporate seal of the bank of North America, in Leazure v. Hillegas, decided at Chambersburg, (post.) There can be no difference whether it is to prove a grant of contract made by *164 the corporation itself, or the seal is used as a medium of proof to authenticate an instrument executed' by others. Here no evidence was given. The seal it was contended proved itself. Nothing could be more unreasonable than to give such effect to any impression called a seal. Public convenience has required Courts to recede from the strict formal proof demanded as to private seals ; but the relaxation, the admission of proqf by witnesses, of the impression, used by a corporation, though they, did not see the seal affixed, is sufficiently liberal; farther than this the Courts have not yet gone, nor ought they to go. This statute proof of execution of a deed should be complied with, and when the Legislature required, the proof of deeds executed out of the State to be 'certified by a chief officer, and under a common or public seal, they intended that when such deed was offered in evidence, the seal should be proved, and when the seal is proved, and not before, is the requisite proof of the execution made ; ©therwise qny instrument conveying lands, with any- seal to it, might be produced in Court as certified under the seal of the corporation where it purports to have been proved. In England, the only seal of a. corporation which Courts will judicially acknowledge, is the seal of the corporation of the city of London.' The deed was not recorded, nor exemplification from the record- offered; but the original was-received in evidence, which without some proof of the seal, ought not to have been admitted. ' For these reasons judgment is reversed. -
Judgment reversed, and a venire facias de novo awarded.