[PHILADELPHIA, FEBRUARY 15, 1833.]

## CHEW *against* KECK and Others.

### APPEAL.

The seal of a foreign corporation cannot be admitted in evidence without proof that it is the official seal which it is asserted to be.

If a similar seal has already been given in evidence, without objection, the jury are not to be permitted to compare the two seals, and judge of the genuineness of the second from the comparison.

If upon a hearing of the cause before arbitrators, the seal has not been objected to, the party offering it on the trial in court, is not entitled, on the ground of surprise, to have a juror withdrawn.*

APPEAL from the Circuit Court of *Northampton* County.

In this ejectment, brought by *Benjamin Chew,* esq., against *Conrad Keck* and others, which after an award of arbitrators between the same parties, came on for trial before HUSTON, J. at a Circuit

---

* The difficulty of proving the seal of a foreign corporation, strongly appears in the case of *Moises* v. *Thornton,* 8 *D. & E.* 303.—REPORTER.

(Chew *v.* Keck and others.)

Court, held at *Easton,* in *April* 1832, the plaintiff, after having given in evidence, a lease for one year dated *September* 4th 1815, from *Francis Rice* and *John Keble,* executors of *Thomas Ingram,* proved before the Lord Mayor of *London,* and certified under the city seal, offered in evidence the deed of release between the same parties, dated on the fifth of the same month, and proved in like manner, to which the defendants' counsel objected, on the ground that it must be first proved that the seal annexed to the certificate is the seal of the city of *London.*

The court rejected the evidence.

The plaintiff's counsel thereupon alleged that they were taken by surprise, inasmuch as this objection was not taken before the arbitrators, and they, the counsel, had always understood that the seal of the city of *London* proved itself. They therefore asked the court for leave to withdraw a juror, offering to make affidavit of the fact of having been taken by surprise.

The court refused to permit a juror to be withdrawn.

The plaintiff's counsel then submitted to the court, that they should be allowed to lay the seal in question before the jury, that they might compare it with the seal affixed to the paper already in evidence. This was also refused by the court; upon which the plaintiff suffered a nonsuit with leave to move to take it off.

A motion to take off the nonsuit was accordingly made, which the court overruled and the plaintiff appealed.

The following reasons for the appeal were filed in this court, *viz.*

1st. The court erred in rejecting the deed of release from *Francis Rice* and *John Keble* to *Benjamin Chew,* of the date of 5th *September,* 1815, and in requiring proof of the seal of the Lord Mayor of the city of *London.*

2nd. That the objection to the admission of the said deed of release, if available, was taken too late; it should have been taken before the deed of lease of the 4th *September,* 1815, had been read, which accompanied and was annexed to the deed of release, was proved by the same deposition, attested by the same seal, was in substance and effect one instrument with the release, and was in this respect read without objection.

3rd. The court should, on the allegation of surprise made by the counsel, and supported by the facts, that although the said deeds were objected to on other grounds before the arbitrators, yet no objection was made on the ground of want of proof of the seal of the city of *London,* have inquired into the matter, and permitted a juror to be withdrawn and the cause continued; because, if the objection had been taken before the arbitrators, the plaintiff could have had the proof of the seal at the trial, and the objection therefore took the plaintiff's counsel by surprize.

4th. The court should have permitted the plaintiff to submit the seal annexed to the probate of the deed of release to the jury, for

(Chew *v.* Keck and others.)

comparison by them, with the other seals of the same officer annexed to the other documentary evidence which was before the court and jury, with an instruction, that if from such comparison the jury believed the impression of the seal to be a genuine one, they should consider the deeds in evidence; otherwise not.

The cause was argued by *Brooke* and *J. M. Porter* for the appellant, and by *Scott* for the appellees.

The opinion the court (Huston, J. being absent) was delivered by

Gibson, C. J.—It is impossible to distinguish this case from *Foster* v. *Shaw*, 7 *Serg. &. Rawle*, 156, which is directly in point, and therefore conclusive in a case precisely the same in all its circumstances. We do not decide, however, the question of competency in regard to such a deed when actually recorded; possibly that might make a different case. The objection here was made in time, and the court was not bound to withdraw a juror on the allegation of surprise, or refer the question of execution to the jury, without at least some proof of the seals ; so that we see no ground to justify us in disturbing the decision of the Circuit Court.

Kennedy, J.—The first reason assigned for a new trial is, that the Circuit Court refused to admit the deed of release from *Francis Rice* and *John Keble* to *Benjamin Chew*, bearing date the fifth day of *September* 1815, to be read in evidence to the jury, unless proof were first made that a seal purporting to be the seal of the city of *London* affixed to a name and signature purporting to be those of the lord mayor thereof, subscribed to a certificate of probate of the execution of the deed endorsed on it, was the seal of the said city. The decision of the Circuit Court on this point appears to me to be wrong, and I therefore think, that on this ground alone a new trial ought to be granted. The judge before whom this case was tried in the Circuit Court, doubtless felt himself bound by the decision of this court in the case of *Foster* v. *Shaw*, 7 *Serg.* & *Rawle*, 163. And sitting in the Circuit Court, I would certainly have decided in the same way, had I not looked upon that decision as not only militating against the principle laid down by the judges of the Supreme Court of this state in 1781 and 1784, in the cases of *M'Dill's Lessee* v. *M'Dill*, 1 *Dall.* 63, and *Hamilton's Lessee* v. *Galloway*, *Id.* 93, but completely overturning a construction thereby given to our recording acts, which I think has been almost universally followed and received ever since, without objection. I would not wish to be understood as insinuating that a Circuit Court, or any other inferior tribunal, may, when it conceives that the Supreme Court has decided or settled any question erroneously undertake to correct it by deciding otherwise. This authority is reserved for the Supreme Court itself; and in order that uniformity and consistency may be preserved as far as is possible, in settling our principles of jurisprudence, it is proper that it should be exercised by it alone. But with two decisions of the judges of the

(Chew *v.* Keck and others.)

Supreme Court, giving a construction to our recording acts, agreeing as I believe with the spirit of them, and followed by a corresponding usage and practice of half a century to back and support me, I would not hesitate to encounter a single decision of that court although of a later date, but alleged to be made for reasons which I consider untenable, because directly at variance with the express provisions of the recording acts themselves.

Since I first saw this decision in the case of *Foster* and *Shaw,* which was shortly after it was published, I have often thought of it, revolved it over in my own mind, and compared it with the provisions and terms of the acts of assembly relating to the recording of deeds and conveyances for lands, and the two other decisions already mentioned, which were made long before it, with a view and a wish to reconcile it with them if possible, but in vain.

The fourth section of the act of the 28th of *May,* 1715, entitled " An act for acknowledging and recording of deeds," enacts, that " *all* deeds and conveyances made and granted *out of this province,* and brought hither and *recorded* in the county where the lands lie, (the *execution whereof* being first *proved* by the oath or solemn affirmation of one or more of the witnesses thereunto, before one or more of the justices of the peace of this province, or before any *mayor,* or chief magistrate, or officers of the cities, towns or places where such deeds or conveyances are or shall be made or executed, and *accordingly certified,* under the common or public *seal of the cities,* towns or places, where such deeds or conveyances *are so proved* respectively) shall be as *valid* as if the same had been made, acknowledged or proved in the *proper county where the lands lie* in this province."

Now this section of the act declares most unequivocally, that all deeds and conveyances made *out* of this province (now state) and *proved* by one or more of the witnesses thereunto before the *mayor* of the cities where such deeds or conveyances shall have been *made,* and *accordingly certified* under the common or public *seal* of *those cities* where such deeds are so *proved,* shall be as *valid* as if the same had been *made,* acknowledged or *proved,* in the proper *county where the lands lie.* Then, by referring to the second section of the act, we discover what the *validity* is that is given by it to deeds *made* and *proved* in the *county where the lands lie.* It is expressed in the following words: " All bargains and sales, deeds and conveyances of lands, tenements and hereditaments in this province, *may be recorded* in the said office ; but before the same shall be so recorded, the parties concerned shall procure the grantor or bargainor, named in every such deed, or else two·or more of the witnesses who were present at the execution thereof, to come before one of the *justices* of the peace of the proper *county* or city *where* the *lands lie,* who is hereby empowered to take such acknowledgment of the grantor, if one, or of one of the grantors if more." Then, by going back to the first section of the act, we find by it, that after establishing the office mentioned in the second section, just recited, for the recording of deeds in each

(Chew *v.* Keck and others.)

county of the province, and after requiring that the *recorder shall* duly attend the service of the same, and at his own proper expense cost and charges provide parchment or good large books, it directs, " that he *shall* record therein, in a fair and legible hand, *all deeds* and *conveyances* which shall be *brought to him for that purpose according to the true intent and meaning of this act.*" Here the question then naturally presents itself, what are the deeds that may be recorded according to the true intent and meaning of the act? It appears to me that it is answered by the act itself, in terms so plain and intelligible, that their meaning cannot be misapprehended ; for by the second section it is declared, that " all bargains and sales, deeds and conveyances of lands, &c. *may be recorded,* &c. being *first acknowledged* by the grantor or bargainor named in every such deed, or else *proved* by two or more of the witnesses who were present at the execution thereof, before one of the justices of the peace of the proper county or city where the lands lie," who is required by the third section, to certify such acknowledgment or probate when taken, under his hand and seal, upon the back of the deed. And again by the fourth section it is provided, that " all deeds and conveyances made and granted *out of this province,* and brought hither, may be recorded in the county where the lands lie, the *execution whereof being first proved,* by the oath or solemn affirmation of one or more of the witnesses thereunto, before one or more of the *justices of the peace of this province,* or before any *mayor,* &c. of the cities, &c. *where* such deeds or conveyances are or shall be made or *executed,* and accordingly *certified,* under the common or public *seal* of the cities, &c. where such deeds or conveyances are so proved." Thus embracing in this last section in clear and express terms, the deed in question, as one entitled to be recorded when brought hither for that purpose. It is likewise equally clear from the terms of the act, that no deed is authorised to be put on record unless the execution of it be first either acknowledged or proved, and such acknowledgment or probate be certified by an officer thereby empowered to take it, in the manner and form prescribed by the act. And indeed it is difficult to account for the legislature's having directed the form with so much particularity in which these certificates shall be made out and given, if it be not to make them *prima facie* evidence, of themselves, of the execution of the deeds, and as such to be received and admitted, not only by the recorder, but likewise by the courts. The recorder must determine by a mere inspection of the deed and the certificate endorsed thereon, when brought to him for the purpose of being recorded, whether it comes within the true intent and meaning of the act ; for he has no means of ascertaining it otherwise : he has no power to administer an oath or affirmation, or to take testimony in any form on the subject. Such a thing is not contemplated by the terms of the act. If the deed have a certificate endorsed upon it, purporting that it was acknowledgd or proved before an officer authorised by the terms of the act to take it, and has apparently

the name of such officer subscribed, together with the proper seal affixed to the certificate, it is, under the provisions of the act, not only *prima facie* evidence of the execution of the deed, but likewise of the authenticity of the certificate of acknowledgment or probate itself. It is made by the act of assembly *per se* presumptive evidence of the execution of the deed, but being only presumptive, may of course be repudiated or rebutted by other testimony.

If the legislature had not intended this, they would certainly have made some further provision for taking proof to authenticate the certificate of the acknowledgment or probate of the execution of the deed; for, with me, it is impossible to doubt for a moment, that the legislature did not intend to put it in the power of a party having a deed for land to dispense entirely with the common law mode of proving the execution of it, and to make the substitute provided for it by the act *perfect* without any ancillary aid from the common law so far as to make the deed admissible in evidence, if pertinent to the issue. This must necessarily be the proper construction of the act, because the recorder has not the means of ascertaining whether the certificate of acknowledgment, or probate of the execution of the deed endorsed upon it be genuine or not. He has no authority given him to administer an oath, or to take testimony for such purpose in any way whatever. He cannot even take the acknowledgment of the execution of the deed from the grantor himself, were he to appear in person before him, nor yet the proof of the execution of it by him from the subscribing witnesses. And were he to do so, and to put the deed on record in his office certifying such acknowledgment or proof of its execution, without any other evidence appearing of it, it would be a perfect nullity, without the least validity, and could neither make it admissible in evidence, nor answer any purpose whatever within the design of the act. Hence, when a deed is brought to the recorder to be recorded, it necessarily follows that he must judge from the face of the certificate of acknowledgment or probate endorsed on the deed of its having been executed: and if the certificate purports to be such on its face as the act of assembly has authorised, it is made his duty to record the deed, and he is not bound to look or examine further; the words of the act are peremptory " that he *shall* record," &c.

The act has uniformly received this construction, as to the certificates of acknowledgments or probates given by justices of the peace, judges of the courts, and other officers of the state, authorised by the act to take such acknowledgments or probates. No proof has ever been required to prove the authenticity of their signatures or seals to such certificates, though in many instances the recorders, courts and juries, know nothing of them more than they do of the seals of foreign cities or corporations. They have always been considered *per se prima facie* evidence of this. *M'Dill* v. *M'Dill*, 1 *Dall.* 63. *Hamilton* v. *Galloway, Id.* 93. *Willink* v. *Miles, Peter's C. C. Rep.* 429. And this is by force of the act of assembly that they have been so

received; for by the common law, the signature of a justice, or of a judge of a court, and their respective seals, are no more admissible in evidence, as such, without proof being first made of their authenticity, than the signature and seal of any private individual, or that of the chief magistrate of a foreign corporation under the common or public seal thereof. 1 *Hale P. C.* 305. 2 *Id.* 52. *Gilb. Ev.* 124. But it is perfectly manifest from the terms of the act, that the certificate of the mayor of a foreign city, given under his hand and the common seal of the city, is put on the same footing with a certificate of a justice of the peace of the county where the land lies, which being given under his hand and seal, is considered and made proof of itself, to entitle the deed upon which it is endorsed, to be admitted to record, and of course to be admitted in evidence on the trial of an issue where it may be pertinent; for both the letter and the spirit of the act require, that due proof of the execution of the deed shall be made before it shall be recorded; and without such proof of the execution of the deed being first made as is required by the act, it is evident that the legislature did not intend that it should be recorded. Besides, it is impossible in the nature of things, that recording of the deed can contribute in the slightest degree to the proof of the execution of it; and the bare act of recording the deed, and certifying that it has been done, is all that the recorder has to do with it; for, I repeat, he has no power whatever to take or to collect proof of the execution, but merely to examine and see before he does record it, that it has a certificate thereof endorsed upon it, appearing on its face to be such as the act of assembly requires. And if he were to record a deed without such certificate of proof of the execution being endorsed, it would be a mere nullity. To demand proof of the authenticity of the certificate, would be to exceed the requisitions of the act; for it cannot be pretended in any case whatever, either in the case of a deed executed and acknowledged or proved abroad, or executed and acknowledged or proved at home within the state, that the act requires proof to be made of the genuineness of the certificate. Besides, to demand such proof to be produced and made within the state, is at once to defeat the facility of establishing the execution of deeds, which was the sole object and design of the act in authorizing the acknowledgment or probates of those executed abroad for lands lying within this state, to be taken and made where they were executed. And, in short, if the language and plain obvious meaning of the act are not to govern, the course of proof may be made interminable, and we shall be without any rule on the subject, having neither common law nor statute law to direct us.

If the deed in this case, then, be authenticated in such manner as to entitle it to be recorded under the provisions of the recording act, as I think I have shown most clearly that it is, the decisions of the judges of the Supreme Court in the cases of *M'Dill* v. *M'Dill* and *Hamilton* v. *Galloway*, are direct and positive authorities in favour of its having been received in evidence on the trial of the cause.

(Chew v. Keck and others.)

The court in *Hamilton* v. *Galloway* say, " the deed may be read in evidence, for the *recording* does not contribute to the *proof* of the deed, which is established *by the oath before the justice :* the recording only gives the deed a special operation by the express provisions of the act of assembly." The special operation given to the deed by the recording of it, which is here alluded to by the court, is declared and set forth in the fifth section of the act, and clearly has nothing to do with making the deed admissible in evidence. But this section also enacts that the copies from the record of all deeds recorded in pursuance of the act, given by the recorder and certified under the seal of his office, shall be allowed in all courts where produced, and declares that they shall be as good evidence and as valid and effectual in law as the original deeds themselves, and that they may be shewn, pleaded and made use of accordingly. Now, if the deed in question had been recorded, and a copy from the record of it duly certified had been offered in evidence, I do not see what possible objection could have been made to it, unless the act of assembly is to be entirely overlooked, and common law principles merely are to prevail. At least it is quite obvious from the nature of a copy, that the impression of the seal of the city of *London* could not appear on it and it would therefore be impossible to call a witness, however well he might know the common seal of the city of *London* to prove that it was affixed to the certificate of probate on the copy. But the act of assembly has declared that such copy *shall be allowed in all courts when produced, and be as good evidence as the original* and *receivable as such, wherever the original might be admitted :* but if it is to be received at all, it must necessarily be admitted without proof being first made that the probate of execution is certified under the common seal of the city of *London,* for no impression of the kind being on the copy, it would be utterly impossible to make such proof, which, in my humble conception, proves to demonstration the incongruity of the decision of this court in the case of *Foster* v. *Shaw,* when compared with the palpable and plain provisions of the act. But if it be considered, which I think is the fair construction of the recording act of 1815, that it makes the certified copy from the record of the deed only " as good evidence as the original, and receivable as such wherever the original may be admitted," so that if the original were not receivable in evidence before, or at the time of its being recorded, it is then as clear as the light of noonday, that a certified copy from the record of it cannot be receivable in evidence, unless the original were so at the time of its being recorded : and of course, according to the decision of the court in this case, a certified copy from the record of the deed in question, if it had been recorded, could not have been received in evidence by the Circuit Court. It seems to follow also as a necessary consequence, that although recorded by the recorder of deeds in the proper office, such record would not be constructive notice of its existence to subsequent purchasers, or mortgagees for valuable consideration, and that it cannot have

the operation and effect declared by the act of assembly, in any way whatever; and these, as it appears to me, are some of the inevitable consequences which must result from the decision of this court in *Foster* v. *Shaw*, and the one just now made in this case, and may very justly excite alarm, for I apprehend that many deeds apparently proved in the same manner as the deed in the present case without a shadow of other proof, have been placed on record by the recorders of deeds, believing it to be their duty to do so, because the act of assembly in so many words required it of them.

It is easy to see that this question was not decided in the case of *Foster* v. *Shaw* in conformity to the directions of the act of assembly, but I think it is not quite so easy to perceive upon what principle it was settled. The court were of opinion that if proof of the seal of the city of *Dublin* had only been given, without any proof of the handwriting of the mayor of that city, whose name was subscribed to the certificate, that the deed would then have been admissible in evidence, otherwise not. But why hold that necessary, and that alone sufficient proof of the giving of the certificate by the mayor of *Dublin*, without proof also of his hand writing? For proof of the seal of a foreign court without proof also of the handwriting of the judge subscribing and certifying a judgment or sentence of it is not sufficient to render it admissible evidence; both the seal and handwriting must first be proved. *Henry* v. *Adey*, 3 *East*, 221. *Delafield* v. *Hand*, 3 *Johns.* 310. *Phil. Evi.* 301. Neither does the seal of a corporation when proved seem to verify whatever it may be affixed to. *Stoever* v. *Whitman*, 6 *Binn.* 416. It is not a different answer to this objection, to say, that the act requires the certificate to be given under the seal of the city in such case, and therefore proof of its being the seal of such city is necessary to satisfy the demands of the act; because the act also requires that all certificates given in pursuance of it, shall likewise be under the hands of the officers respectively giving the same, and if proof of the seal be necessary under the act, proof of the handwriting of the mayor would seem to be equally so. But why stop here; why not go further and require proof also of the appointment of such mayor, and again, that the city of which he professes to be mayor is a corporation, and has a right to use such a seal? And if taking proof of the execution of the deed be considered a ministerial act merely, then the oath of the officer taking it, or of some one who was present at the time of taking the proof would be requisite to prove the truth of the certificate before it could be given in evidence. *Gilb. Ev.* 124. 1 *Hale P. C.* 305. 2 *Hale P. C.* 52.

These are difficulties however, which can only be raised when we fail to adopt the act of assembly as the rule of our decision, and therefore ought not to be overlooked in settling the question before us.

That a copy from the record, duly certified by the recorder, would not have been admissible in evidence, has not been seriously

(Chew *v.* Keck and others.)

contended for, had the deed in this case been recorded, nor do I see how it could with the least degree of plausibility, consistently with the directions of the act of assembly. But if the copy, not of the deed itself, but of the record of it, which is in truth only the copy of a copy, be admissible, of which it appears to me there cannot be the slightest doubt, and yet it be held that the original cannot be received, it necessarily leads to this conclusion, that the original is not as good evidence as the copy even of a copy of it; a proposition so much at variance with all those rules and principles of evidence, which have been founded upon the experience and wisdom of ages, and are so admirably adapted to the attainment of truth, without which justice cannot be administered, that I cannot yield my assent to it. But it is said that under the act of assembly the original possibly might be receivable in evidence when recorded, although without being so it cannot. It is very certain that the act in terms has not so declared it. The fifth section, which declares the effect of recording, enacts that all deeds and conveyances when duly recorded, " shall be of the same force and effect here for giving possession and seisin, and making good the title and assurance of the said lands, tenements and hereditaments, as deeds of feoffment with livery and seisin, or deeds enrolled in any of the king's courts of record at *Westminster* are or shall be in the kingdom of Great Britain," without using a single word or expression tending in the least to shew that the legislature intended that they should be received in evidence when recorded, although not before. Now, it is, as was rightly held in *Hamilton* v. *Galloway,* 1 *Dall.* 93, the probate or acknowledgment of the deed before the proper officer, that makes it admissible in evidence, and not the recording of it, for without being proved so as to be admissible in evidence, it is not entitled to be recorded. It is said, however, that by requiring deeds to be recorded as well as acknowledged or proved in the manner pointed out by the act, before they shall be received in evidence, may afford protection against imposition and fraud arising from forgery or other malpractices ; because after they are placed upon record, every person concerned or interested, may not only thereby come to a knowledge of their existence, but provide more effectually against any unjust and evil effect or operation from the use of them. But to this it may be replied, that as the legislature, from the wording of the act do not seem to have intended, or had such object in view, courts surely can have no authority for directing it. And beside, even under this construction of the act, the deed that is recorded but the minute before it is offered in evidence, must be considered as fully admissible as if it had been recorded years before, so that the recording of it may be managed and done by the party holding it, in such a way as to have the benefit of giving it in evidence, without affording much if any advantage to those who may be concerned so as to apprize and enable them to defend against the operation of it, as has been suggested. It appears to me that the second

(Chew v. Keck and others.)

section of the act of the 18th *March*, 1775, which is a supplement to the act of 1715, fortifies and strengthens the view which I have taken of this matter, in declaring still further the effect of neglecting to record a deed within a limited time; which is, that if not recorded within six months after its execution, it " shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance be recorded as aforesaid before the proving and recording of the deed or conveyance under which such subsequent purchaser or mortgagee shall claim." This provision then, in connexion with the seventh section of the act of 1715, which declares, that " if any person shall forge any entry of the said acknowledgments, certificates or endorsements, whereby the freehold or inheritance of any man may be charged, he shall be liable to the penalty against forgers of false deeds, &c. And if any person shall perjure himself in any of the cases hereinabove mentioned, he shall incur the like penalties as if the oath or affirmation had been in a court of record," seems to have been, in the opinion of the legislative body at those different times, all that was requisite in order to guard and provide against the evils or inconveniencies that might arise from men neglecting or refusing to record their deeds; without declaring that until recorded they should not be received in evidence, or be otherwise first proved according to the rules of the common law. A clause to this effect could readily have been inserted, if the legislature had designed such a thing, but it is clear to my mind, that the very reverse was intended. They intended to dispense entirely with the common law mode of proving all such deeds, when proved in the manner prescribed by the act, whether recorded or not.

In conclusion, I will refer to *Milligan* v. *Dickson, Peters C. C. Rep.* 433, where a certified copy from the recorder's office of the proper county, of a letter of attorney given to convey land lying in this state, which appeared to have been executed in *Scotland*, and acknowledged before the Lord Provost and chief magistrate of the city of *Edinburgh*, and so certified by him under the seal thereof, was offered in evidence, and objected to; first, because it was only an exemplification and no proof given of the loss of the original; second, because it was only certified to have been *acknowledged*, whereas the act of 1715 provided only for its being admitted in evidence upon its being certified to have been *proved* by one or more of the witnesses thereunto; but the objection that no proof was offered of the seal of the city of *Edinburgh*, seems not to have occurred or been thought of by any one concerned in the case, although much discussed by those whose competency, as well from ability as from knowledge and experience in the practice of the law will not be questioned. This is not only strong evidence to shew that such objection is in contravention of the act of assembly itself, but most powerful to shew that in practice it had never been taken or thought of among the profession before the case of *Foster* v. *Shaw*.

Judgment of nonsuit affirmed.