## BAYARD et al. *v.* ATKINS.

Testatrix bequeathed the residue of her estate in trust, and, after giving certain legacies out of the fund, directed her trustees to invest the residue in trust for A., and to appropriate so much of the income as should be necessary to his maintenance until twenty-one, and after he should arrive at twenty-one, the income should be paid to him semi-annually for life, and if he lived until twenty-one, he might dispose of the principal by will, but if he should die before arriving at twenty-one, or intestate, then the principal sum to descend to testatrix's heirs at law.—*Held:* The income as it accrues, after deducting maintenance, vests absolutely in A., and is not subject to the contingencies on which the principal is devised over.

FROM the Common Pleas of Philadelphia. In equity.

*Jan.* 23. This was a bill filed by Thomas Astley Atkins, by his guardian, against the trustees under the will of Sarah H. Astley. The testatrix, after bequeathing certain legacies, gave the residue of her estate to defendants in trust. She then directed the said trustees to invest $10,000 for the use of her niece M., the income thereof to be paid to her semi-annually, with power to her to dispose of the same by will; and if she should die without a will, the principal sum to descend to her heirs-at-law. She also directed the trustees to invest $5,000 for N., in the same manner as in the foregoing clause, and $1,000 each, for five of her grand-nieces, by the same words. The clause under which the question arose then followed, and was in these words: "Fourthly—I direct that the residue of my estate, so devised in trust, shall be invested for the use and benefit of Thomas Astley Atkins, and that the said trustees shall appropriate so much of the income thereof as may be necessary for the suitable maintenance and education of the said T. A. A., until he shall arrive at the age of twenty-one years; and that, after he shall arrive at the age of twenty-one years, the income of the whole sum so invested shall be paid to him semi-annually, during his life; and if the said T. A. A. shall live and arrive at the age of twenty-one years, I give him full power to dispose of the principal sum by last will and testament. But if he shall die before arriving at the said age, or if he shall die leaving no last will and testament, the said principal sum shall revert and descend to the heirs-at-law of me, the said Sarah H. Astley."

The bill set forth that there was a balance in the trustees' hands as residue of $34,404, and prayed that the trusts should be executed and an allowance made out of the income for maintenance and education, and that the residue of the annual income, as it accrued, should be paid over to the guardian, and for general relief.

The defendants submitted to pay according to the decree of the court.

The decree declared that the residue of the income after payment of an allowance for maintenance, formed no part of the residue of the estate devised over in case of T. A. A.'s death under age and intestate, and directed it should be invested by the trustees and paid to complainant on his arriving at twenty-one; but if he die previously, the balance to be paid to his personal representatives.

*Perkins*, for appellants.—The surplus income goes with the capital of the residue, for the general intent of the will is plain that nothing is to vest in him until the time for payment. That this is the period for the vesting of the interest appears from 3 Ves. 536; Ib. 363; 1 Rop. on Leg. 378–90; 1 McC. & Y. 295; 2 Meriv. 363; and it seems clear that where an allowance for maintenance is directed out of the income, what is not required, follows the fate of the principal: 6 Ves. 239; 3 Bro. Ch. 416; 3 Ves. 10–17; Anon. 2 Vern. 199. But if there is no disposition of this surplus, the next of kin take it: 8 W & S. 348.

*Clay* and *Williams*, contrà.—The principal vests presently subject to contingencies and payable in future, and in such cases the income vests absolutely: 9 W. 403; 4 W. 130; 4 Raw. 440; 1 W. & S. 205; 2 Ashm. 332; 2 Rop. 331; Amb. 448. The introduction of contingencies does not prevent the vesting of an absolute interest under the previous words: 3 Meriv. 335; 9 Ves. 146; 1 Rop. 387; 9 Sim. 644; 7 Ves. 421. Nor is the income made contingent by the direction to accumulate until the time for payment arrives: 2 Beav. 221. These contingencies only affect the principal, and not the accruing interest: 2 Rop. 230; 2 P. Wms. 419; Ib. 504; 1 Bro. Ch. 335; 1 Ves. Sr. 485; 1 P. Wms. 500; 1 Bro. Ch. 103; 6 S. & R. 556; 6 S. & R. 460; 9 Sim. 644; Amb. 448; 1 Bro. Ch. 82; 9 Ves. 146; 1 Turn. & Russ. 232; 4 M. & G. 1107.

In Leake v. Robinson, there was an express gift of the interest, and in Duffield v. Moore, no gift of the shares which went to next of kin: but here there can be no intestacy, since the residue is

bequeathed: 5 W. & S. 254; 3 M. & K. 267; especially as this income formed no part of the testatrix's estate at her death: 6 S. & R. 460. The same construction must be applied to this as the other legacies, which are in substance the same. There it is clear no devise over or intestacy was intended as to the income.

*Feb.* 3. BELL, J.—Is Thomas Astley Atkins, or his personal representatives, entitled absolutely to the accumulations of the surplus income accruing, yearly, from the residue of the estate directed to be invested for his use and benefit? As the appellees do not quarrel with that part of the decree which assigns to the legatee a certain sum for maintenance and education, this is the sole question. Its solution, of course, depends upon the proper construction of Mrs. Astley's will, and particularly of the fourth clause.

The first inquiry is, did the legatee's interest in the residue vest immediately on the death of the testatrix? If so, it is conceded the accumulations of interest will follow the fate of the principal fund. The position of the appellees is, that the terms of the gift carry principal and interest; the principal vesting *in præsenti*, though payable *in futuro*, and defeasible upon contingencies, but the income vesting absolutely.

In the construction of wills like the present, the oft-repeated rule is, that where a legacy is given to a person to be paid or payable at or when he shall arrive at the age of twenty-one, or at a future definite period, the interest in the legacy shall be considered to be vested immediately on the testator's death, the time being only annexed to the payment, and not to the *gift* of the legacy. This rule, borrowed from the ecclesiastical courts, is positive except in those cases where it is clearly overborne by the expressed or necessarily implied intention of the testator. Adherence to it has been found necessary to preserve uniformity of decision. Among the numerous English cases decided in accordance with it, may be mentioned Bolger *v.* Mackell, 5 Ves. 509. I quote this precedent because it is of undoubted authority, and, in its principal features, bears a striking resemblance to the case in hand. The testatrix gave her residuary estate to C., and to the children of J. and S., in equal shares: the proportions of sons, with the interest or accumulations, to *be paid* at their ages of twenty-one, and those of daughters at twenty-one or marriage, after deducting what might have been expended in their maintenance or advancement in the world. J. had no issue, but S. died leaving two sons, neither of

whom attained the age of twenty-one. The question was whether, notwithstanding that circumstance, two-thirds of the residue vested in them. And it was held that they took vested interests; Lord Rosslyn remarking that it was a mere bequest of the residue of personal estate, *payable* at twenty-one, so that the rule as to vesting must take place, which was not prevented by the addition of a direction that maintenance should be deducted.

This rule of the English courts has been, repeatedly, recognised and acted upon in our own state. In Moore *v.* Smith, 9 W. 403, it is tersely stated by the present Chief Justice, and the distinction, taken by the cases, between antecedent gifts in terms independent of the direction and time for payment, and bequests solely implied from the direction to pay, pointed out. The latter, it is truly said, are inseparable from the direction, because wholly dependent upon it, and must, therefore, partake of its quality, which, if contingent, will make the gift so. But, as will presently be seen, an independent bequest is not, necessarily, controlled by a contingency upon which its subsequent payment is made to depend; for, in those instances, the clause of gift is regarded as operating *proprio vigore*, so far as the question of vesting is involved. From among the illustrations of the general rule, furnished by our own determinations, I will merely cite, in addition, Schriver *v.* Cobeau, 4 W. 130, Hellman *v.* Hellman, 4 R. 440, and King *v.* King, 1 W. & S. 205. These, in connexion with the other authorities, fully sustain the position asserted in Leake *v.* Robinson, 2 Meriv. 363, and Phillips *v.* Chamberlaine, 4 Ves. 51, that the court always inclines to construe a residuary bequest so as to prevent an intestacy; and the doctrine stated by Sir Richard Pepper Arden, in Booth *v.* Booth, 4 Ves. 399, 403, that the courts are always liberal as to the vesting of a legacy, whenever it can be contended that payment is merely postponed on account of the age of the party, or other circumstances.

In the clause of the will in hand, the opening direction is "that the residue of the estate so devised in trust shall be invested for the use and benefit of Thomas Astley Atkins." This is followed by an appropriation of so much of the income thereof as may be necessary for his maintenance and education, until he arrives at full age, after which the income of the whole sum invested is to be paid to him during life, with full power of disposition of the principal sum by will. "But if he shall die before arriving at the said age, or if he shall die leaving no last will and testament, the said principal sum shall revert and descend to the heirs-at-law" of the

testatrix. Let us, for a moment, strike from the clause all that relates to maintenance and education, and to the contingency upon which the legacy is to go over, and inquire whether, under the remaining directions, it would vest immediately on the death of the testatrix. The first operative words certainly import a present gift, and the inference of an intention that it shall vest is strengthened by the appointment of a trustee; for how, asks Sir William Grant, in Branstrem *v.* Wilkinson, 7 Ves. 421, could there be a trustee appointed for nothing? Had these words of gift been followed by a direction to pay to the legatee the principal sum when he attained his majority, the case would have been, precisely, within the rule I set out by stating. But, in principle, there is no difference between such a direction and that which has place here, for the payment of the whole income, coupled with a power of disposition over the principal sum, at the age of twenty-one. In both, the object is to give to the beneficiary the enjoyment of the whole fund; the difference being only in the mode of its enjoyment. A very common manner of disposition is to give the avails of an estate or of a fund during life, with a general power of appointment, and in default thereof, over. In such a case it would scarce be thought the donee had no vested interest in the thing which was made the subject of enjoyment.

Between such a case and the present there is no difference, but in the fact that here, the power in its exercise is restricted to the employment of a particular form of instrument, which can of course make no difference in the nature of the interest the legatee takes under the bequest. In both, the immediate dominion is made defeasible upon the contingency of non-action by the first taker, though the room for action may be greater in the one instance than in the other.

It is to be observed, too, that the present is not like a bequest at, or when the legatee shall attain a particular age. This form of expression is said to constitute the time of payment as of the essence of the gift, and postpones the vesting of the interest until that time arrives. But the direction, here, after the general words of gift, is to *pay* the income at an ascertained time, and what follows operates to invest the legatee, at the same moment of time, with full power over the subject-matter of the gift. He, therefore, for every purpose, takes a present vested interest, for though full enjoyment of, and dominion over the subject, is postponed until a future period, so, also, it is where there is an immediate gift of a sum of money to be paid *in futuro*.

This being so, we are led to inquire, does the directed appropriation for education and maintenance withdraw this bequest from the general rule of vesting? Upon this point there seems to be a distinction. In Crickett v. Dolby, 3 Ves. 17, it is said that if a partial maintenance be given, as, for instance, an annual sum, less than the whole interest of the principal, the child shall have no more, and the executor paying that sum shall have all the rest. But if maintenance be given, generally, so that the whole of the interest may be exhausted, that shows the testator meant the fund to carry interest for the benefit of the child. Such are the terms of our bequest. Under it, the whole yearly interest might, possibly, be expended in its application for maintenance and education, and as the only effect of vesting, in this case, will be to give to the minor legatee the intermediate interest, the distinction is directly applicable. This general doctrine is sustained by other cases. In Hanson v. Graham, 6 Ves. 239, a bequest that would otherwise have been contingent under the language used, was held to be vested by a direction to put the fund at interest for the benefit of the legatees; and a similar principle is announced in Pulsford v. Hunter, 3 Bro. Ch. C. 416. In Bolger v. Mackell, *supra*, it was determined that a general direction for the deduction of maintenance during minority, would not interfere with the general rule as to vesting; and Hulme v. Hulme, 9 Sim. 644, is to the same effect. There, the testator directed his executors to apply the income of his residuary estate for the maintenance of his children, until the youngest attained twenty-one, and then to divide the capital; the daughters' shares to remain in trustees' hands for their separate use; and on the decease of each daughter, to be paid to her issue. One of the daughters, who was living when the youngest child attained full age, died a spinster. Sir Launcelot Shadwell, V. C., held that there was an absolute gift by the first operative words, which was not taken away in the case of the daughter dying without having children, as she did not come within the condition upon which the shares were to go over.

The next subject of inquiry is, does the contingent bequest over, in our case, prevent the immediate vesting of the residue, under the prior words of gift? All the cases show it does not, though, undoubtedly, such a bequest over of the entirety may be called in aid of other circumstances, to show that no present interest was intended to pass. This general rule was asserted in Skey v. Barnes, 3 Meriv. 335, and in Deane v. Test, 9 Ves. 146. Lord Eldon held that the vesting of a legacy was not prevented by a provision

for survivorship among the legatees, in the event of any dying under twenty-one years. In such a case, he said, the effect of vesting was *to give the accruing interest to the legatee, though the principal went over to the survivor*. Generally, such contingencies affect the principal only, for it is that only which is devised over;' and the first legatee takes whatever interest the legatee over is not entitled to. Upon this point, Nicholls v. Osborne, 2 P. Wms. 419, is a leading case. That was a bequest of a personal surplus to an infant niece, to be paid to her at her age of twenty-one, with a bequest over if she should die before that time or marriage. It was decreed to be *debitum in præsenti, solvendum in futuro*, and that the legatee was entitled to the interest in the mean time. This was followed by Taylor v. Johnson, 2 P. Wms. 504, where A. devised 500l. to his infant grandson, without appointing any time for payment, with a proviso that if the legatee died before twenty-one, the legacy should go over to B.; and the grandson was held entitled to the interest of the legacy during his infancy. Both these cases were decided on the ground that the condition being subsequent to the gift, can only defeat the legacy from the time it happens, and consequently, in the mean time, it vests and carries interest for the benefit of the legatee. It was likened to a devise of lands, to be void if the devisee should die before full age, in which case it could not be doubted the devisee would be entitled to the mesne profits in the interval. This was the case in Phipps v. Akers, 4 Man. & Gr. 1107, where it was said the first devisee was entitled to everything not given to the second. Chaworth v. Hooper, 1 Bro. Ch. C. 82, was decided upon the same principle. The devise there was of a residue to an infant, with remainder over if the legatee died under age. The event took place, and it was determined that the interest of the residue, from the death of the testator, went to the representative of the first taker, and not to the remainder-man. Ch. Baron Eyre, who pronounced the judgment, asked, What is to become of the produce ? Where would the use be, if it were a specific thing, or the rents, if it was land? and, he adds, the produce must go to the person who has the thing liable to be divested; when divested, it goes, from that moment, to the person entitled to come in. In the same book we have Hawkins v. Combe, 1 Bro. Ch. C. 335, where one gave the residue of his estate to trustees, *inter alia*, to lay out one-third part in securities, the interest to accumulate for the benefit of the children of his niece, and if she should survive her husband and have issue under twenty-one years of age, the

trustees were directed to apply the interest for their maintenance till they respectively attained twenty-one, at which period equal shares of the principal were to be transferred to them. It was decreed that the interest which accrued in the interval of time between the majorities of the elder and younger children, should be divided between them; for, it was said, legatees who take a contingent interest, take the income which accrues in the mean time. To these cases may be added Green v. Pigot, 1 Br. Ch. C. 103; Shepherd v. Ingram, Amb. 448; and Tissen v. Tissen, 1 Pr. Wms. 500, where Lord Hardwicke said, that to make the interest go over, there ought to be very express words. These decisions are followed by our own cases of Mifflin v. Neal, 6 S. & R. 460, and Lefevre's Appeal, Ib. 556, both of which seem to me conclusive of the point under consideration; and, indeed, go very far to settle all the points raised in this discussion.

I have said the positive rule of construction upon which I have thought this case turns, may be overborne by the plain manifestation of a contrary intent. If, upon the sound construction of a will, it appear the testator meant the time of payment and of vesting should be the same, the case will form an exception, though the legacy be given in terms of immediate bequest, with a direction for payment at twenty-one, or other definite period. Such, perhaps, was the case of Mackell v. Winter, 3 Ves. 536, in which Lord Rosslyn, overruling Sir Richard Pepper Arden, postponed the vesting of the legacy until the time fixed for payment, under the peculiar frame of that will. But it may be remarked that in the subsequent case of Booth v. Booth, 4 Ves. 399, the Master of the Rolls reiterated his opinion, and expressed his confidence in its soundness, notwithstanding the adverse decree of the Lord Chancellor. In Balsford v. Kebbell, 3 Ves. 363, also cited by the appellant, Lord Loughborough thought the gift contingent, because there was no gift of the *corpus*, but in the direction for payment, which was clearly contingent; and in Howes v. Herring, 1 McC. & Y. 295, the bequest of the overplus was in the same predicament. These decisions do not, therefore, conflict with the doctrine I have stated.

Perceiving no such peculiarity in the will of Mrs. Astley as can withdraw the particular bequest, under consideration, from the operation of the general rule of vesting, it must be left to be governed by the well considered cases I have brought to view. These prove the decree of the court below to be correct.

Decree affirmed.