# Duffey *versus* The Presbyterian Congregation of Bellefonte.

*Certificate under seal admissible without proof of seal.—Ratification of will by acceptance of legacy.—Interest on legacies.*

1. A deed proved in 1803 before the mayor of Wilmington, Delaware, and certified under the corporate seal of the city, is admissible in evidence without proof of the identity of the impression.

2. Where the evidence of the ratification of a will, by the acceptance of legacies under it, consists of the acts of the party and of the language used by the party in the will, it is not error to submit the whole question to the jury under proper instructions as to the effect of such ratification.

3. Interest is chargeable on legacies that are payable without any contingency or limitation as to time.

ERROR to the Common Pleas of *Centre county.*

This was a feigned issue, directed by the court below, between the Presbyterian Congregation of Bellefonte, plaintiffs, and Jane C. Knox Duffey and Melissa Euphemia Duffey, residuary devisees of Jane C. Knox, deceased, in relation to a devise by Elizabeth Knox, deceased, to the said congregation.

The devise was in these words :—

" Item 4.—I give and devise to the Presbyterian Church five hundred dollars, to be paid by the person who will administer on my estate, to the sessions of the Presbyterian Congregation of Bellefonte, and by them to be applied to such religious purposes as they may think proper."

She further devised as follows :—

" Item 6.—I give and devise to Jane C. Knox, and to her heirs and assigns, the residue of all my estate, real, personal, and mixed, especially all that part of the real estate devised by Galbraith Knox to her in his last will, and I desire it to be understood that I have not and did not relinquish my right to all the land conveyed to me and my husband, Galbraith Knox, by Hugh Means, merchant, of Philadelphia, but it shall be contained in the above devise."

Hugh Means, referred to above, was the uncle of Elizabeth Means, who was intermarried with Galbraith Knox, and was the owner of a tract of land on Buffalo Run, in Northumberland county, now Centre county, called " Meanwell," patented to him December 4th 1788, and by him conveyed by deed of assignment, dated July 20th 1789, to Galbraith Knox and Elizabeth Knox his wife, their heirs and assigns.

In pursuance of that deed of assignment they went into possession, and lived on it until the time of their respective deaths. Galbraith Knox died in February 1835, and Elizabeth his wife in February 1844. Galbraith Knox was also the owner by pur-

chase of an adjoining tract of land in the name of John Hendricks, and it was averred had settled on the "Means tract." By his will he divided all his land into four shares, giving to his daughter Jane his dwelling-house and saw-mill. Elizabeth Knox always claimed the Hugh Means tract as her own, and willed it to her daughter Jane C. Knox, who was living on the land at the time of her mother's death. Jane C. Knox occupied the land during her lifetime, and on the 13th of April 1858, made her last will and testament, in which, *inter alia*, she devised to the Presbyterian Congregation of Bellefonte $400, to be paid in annual instalments out of the rents, issues, and profits of her farm, and the residue of her estate to the defendants in the issue. She died April 15th 1858.

Letters testamentary, in due form of law, were issued to her executors, H. N. McAllister and E. C. Humes, who, under proceedings in the Orphans' Court of Centre county, sold the real estate of Jane C. Knox for the payment of debts, and an auditor was appointed to settle, adjust, and make distribution of the balance in the hands of the executors to and among those legally entitled to the same.

The Presbyterian Congregation of Bellefonte appeared before the auditor and claimed the legacy to that church, contending—1. That by the will of Elizabeth Knox, her legacy to the Presbyterian Church was a vested legacy, that it became so by virtue of the blending the real and personal estate in the residuary devise to Jane C. Knox, and that the sale discharged the lien of the legacy, Jane C. Knox being bound to pay the legacy devised to the Presbyterian Church by her mother Elizabeth Knox; and 2. That the legacy to the Presbyterian Church of $400 in her will was a disposition *bonâ fide* made for a valuable consideration, and was not avoided by the statute of the 26th of April 1855, she reaffirming in substance the legacy of her mother.

The devisees insisted—1. That Jane C. Knox came into possession of the property by devise from her father Galbraith Knox, that this devise was ratified by her mother in her will, and that the devise to the Presbyterian Church, in the will of Elizabeth, was not a charge on the land of Jane C. Knox. 2. That by the Act of April 6th 1855, the legacy to the Presbyterian Church in the will of Jane C. Knox was void, not having been made thirty days before her death, and that there is nothing in her will showing that she intended to reaffirm the legacy of her mother.

The auditor rejected the claim of the Presbyterian Church, and exceptions were filed to his report. After argument the report was referred back to the same auditor to take more testimony, and make a full report of the facts.

Full testimony was then taken before the auditor and reported,

[Duffey *v.* Presbyterian Congregation of Bellefonte.]

and an argument had before his honour Judge LINN, who, having been counsel for Jane C. Knox, declined filing an opinion, but ordered a feigned issue to try the facts in dispute, and certified the case into a special court as above stated.

On the trial the plaintiffs in the issue offered in evidence the patent of the Commonwealth of Pennsylvania to Hugh Means, and a deed-poll from Hugh Means to Galbraith Knox and Elizabeth his wife.

This was objected to—1st. Because the seal of a corporation, whether foreign or domestic, must be proven by a witness acquainted with the impression of the seal.

2d. That the seal itself, impression, device, mottoes, &c., must be proved by some person who knows the impression, device, mottoes, &c., before the deed can be given in evidence, that the grantor's signature must also be proved, and that the deed was delivered at the time.

The objections were overruled and the evidence admitted.

Plaintiffs also offered in evidence declarations of Elizabeth Knox and Jane C. Knox, and that Jane C. Knox had always claimed the land through her mother.

To which defendants objected—1st. Because the conversations and declarations of Elizabeth Knox or Jane C. Knox are not evidence to contradict the written wills of Galbraith Knox and Jane C. Knox. 2d. Because they are irrelevant.

These objections were also overruled and the evidence admitted.

The court were requested by defendants to charge the jury :—

1. That Elizabeth Knox, widow of Galbraith Knox, having elected to take the bequests made to her under the will of her husband, accepting and receiving the same with full knowledge of her rights, the plaintiffs, claiming under her will, stand in no better situation, and cannot recover.

2. That Elizabeth Knox, by her will in item 6th, confirms and ratifies the devise of her husband, Galbraith Knox, to his daughter Jane of this very land, clearly and without limitation or encumbrance. Therefore the plaintiffs cannot recover.

3. And that under the law and the evidence in this case, the defendants are entitled to a verdict.

The court below (WOODS, P. J.) charged as follows :—

" It would appear that at an early day, Galbraith Knox and his wife Elizabeth settled on a tract of land on Buffalo Run, called by the witnesses the Means land. There is some dispute as to how they held this tract. The defendants contend that the title to it rested in Galbraith Knox alone in fee. We have no clear evidence as to whether he claimed by settlement or conveyance. It has been, however, proved that he and his wife disputed as to who had the legal title. That she always claimed that the land was hers, and came to her through her uncle Hugh Means.

[Duffey *v.* Presbyterian Congregation of Bellefonte.]

"The plaintiffs have given in evidence a patent from the Commonwealth to Hugh Means, and a deed of conveyance from Hugh Means to Galbraith Knox and Elizabeth Knox jointly.

"If the title to this land was vested in Hugh Means, and he conveyed it to Galbraith Knox and Elizabeth Knox his wife jointly, and if he and his wife went into possession under this conveyance from Hugh Means, he could not afterwards set up a claim to it by settlement, so as to oust the right of his wife.

"In order then to arrive at the correct conclusion in this case, it will be necessary for you to find how Galbraith Knox and Elizabeth his wife went into possession of this land. [You have seen that their heirs now have the conveyance from Hugh Means. Is there anything in the evidence to show that they ever claimed to have taken possession of it under any other title?] You have heard the evidence, and you will ascertain how this is. If you are satisfied that they derive their title from Hugh Means, then they held this land jointly, and Galbraith Knox could not either by deed or will affect or destroy her title to it. Where a deed, as this one, conveys land to a man and his wife jointly, the survivor takes the whole in fee, unless her title is destroyed by her own acts. The acts or will of her deceased husband cannot affect her rights. This brings us to the consideration of the question whether Elizabeth Knox has by her own acts estopped herself from claiming the title to the Means survey as survivor of her husband. The will of Galbraith Knox has been given in evidence. By that instrument he disposes of the Means tract. This would not of itself affect the right of his wife to the whole of it as survivor; if they derive their title to it from the deed given in evidence and before referred to, the whole of it belonged to her. Under this will, however, certain things are devised to her, the third of the rents of this land, and all of the other lands of testator and certain personal property. The defendant contends that Elizabeth Knox accepted and took the property devised to her by her husband, and by doing so she was estopped from setting up any title which would be antagonistical to that of her husband, to any of the land devised in his will. That she cannot take the devise to her, and then set up a claim or title which would destroy the other bequest contained in said will, is true. But the wife is entitled to the one-third of the rents, issues, and profits of all the land of her husband, independent of any provision in his will. In securing the third of the rents of the Hendricks land, did she take it as her right at common law or under the will of her husband? The personal property was also devised to her and her daughter by his will. Did she accept and take this devise to her as devised under his will?

"The law, as we have said, will not allow her to claim and receive a bequest in her favour, and then set up a claim or title

12 Wr.—4

which would destroy the other devises in the will. And if Elizabeth Knox did take the third of the other land of Hugh Knox, and all the personal property bequeathed to her by him, as devised under his will, she would be estopped from setting up an adverse title to this land which was also devised in said will. Is such the case? This you will ascertain from all the evidence in the case. If she did, the plaintiffs cannot recover. In this connection you can consider how Jane C. Knox, the defendants' testatrix, claimed to hold this land. Whether from her father or from her mother.

The defendants' points were answered thus:—

"1. If the facts are as assumed in this point, then the law would be as stated, but we cannot say that Elizabeth Knox ever accepted or elected to take the bequests made to her under the will of her husband. This is a question we have submitted to you in our general charge.

"2. We do not understand that Elizabeth Knox, by her will, in any way recognised the right of her husband to devise this land, but quite the contrary; and we take the legacy of Jane C. Knox to be a bequest to her by Elizabeth. Knox herself, and not in any way acknowledging the right of her husband, &c. We therefore refuse to answer as requested.

"3. This will depend on how you shall find the questions we have submitted to you in a general charge."

There was a verdict and judgment for plaintiffs. Whereupon defendants sued out this writ.

The errors assigned were—1. The admission in evidence of the patent and deed from Hugh Means to Galbraith Knox and wife.

2. The admission of declarations of Elizabeth and Jane Knox, as to the ownership of the Means tract, the refusal to affirm the defendants' points, and to so much of the general charge as is printed above in brackets.

*James MacManus*, for plaintiffs in error.

*Edmund Blanchard* and *William P. Wilson*, for defendants in error.

The opinion of the court was delivered, June 22d 1864, by

AGNEW, J.—The controversy in this case sprang up in the distribution of the proceeds of the sale of the real estate of Jane C. Knox. The defendants in error, who were plaintiffs below, in a feigned issue to ascertain the facts, claimed a legacy under the will of Elizabeth Knox, mother of Jane C. Knox, alleged to be charged upon the real estate in question, and that Jane derived her title to this estate from her mother. The defendants below alleged that Jane's title to this estate came to her from her

[Duffey *v.* Presbyterian Congregation of Bellefonte.]

father, and, consequently, that the estate was not charged with the legacy given by her mother to the congregation. Elizabeth Knox, the mother, claimed title by survivorship, through a deed from Hugh Means to her husband Galbraith Knox and herself jointly; while on the other hand it was alleged that Galbraith Knox and his wife had settled on the land at an early day. Galbraith Knox made his will, in which he undertook to devise the land to others, but made certain bequests to Elizabeth Knox his wife, including the one-third of the profits of all his lands. Elizabeth Knox also made a will, in which she devised this land to her daughter Jane C. Knox, describing it as the same which Galbraith Knox had devised to Jane, but adding immediately, " and I desire it to be understood, that I have not and did not relinquish my right to all the land conveyed to me and my husband, Galbraith Knox, by Hugh Means, merchant of Philadelphia, but it shall be contained in the above devise."

Thus, it is apparent that the controversy was between the title of Galbraith claimed in his own right, and the title of Elizabeth Knox claimed under the deed from Hugh Means; and, therefore, that the evidence admitted in the court below, stated in the first and second bills of exception, was rightly received. The patent to Hugh Means was not irrelevant because it was the foundation of Elizabeth Knox's title, identified the land and the title under which she claimed. Its early date, 1788, and the date of the deed of Hugh Means, 1789, tend strongly to show that the possession of Galbraith Knox was under this title.

The admission of the declaration of Elizabeth Knox and Jane C. Knox of their claim of title through Elizabeth Knox was clearly right. The declarations of a person in possession of land are always received as explanatory of the title he is claiming; they are part of the *res gestæ* of his possession. In this case it was the very question whether Elizabeth Knox accepted the provisions of the will of Galbraith Knox, or claimed the estate in her own right; and whether Jane claimed under the will of her father or that of her mother. It was not a contradiction of his will, but the proof of a fact independent of the will.

The second branch of the first bill of exception involves an important question of practice. The deed of Hugh Means to Galbraith and wife was objected to because there was no proof of the seal of the corporation of Wilmington, before the chief officer of which the probate had been made in the year 1803. The case of Foster *v.* Shaw, 7 S. & R. 156, followed by a majority of the court in Chew *v.* Keck, 4 Rawle 163, undoubtedly sustains the position of the plaintiff in error, though the dissenting opinion of Justice Kennedy in the latter case, shows most conclusively that under the recording acts every probate and acknowledgment, whether evidenced by the mere signature of the

officer or by the seal of a court or a corporation, is *primâ facie*
evidence of the execution of the deed; and this certainly is the
general understanding of the profession.  It seems difficult to
understand how a deed acknowledged or proved before a justice
in a distant country can be read upon his naked certificate; and
yet, why the certificate of a mayor or chief officer of a city, forti-
fied by the public seal, is insufficient until the party has gone to
London, Paris, or St. Petersburg, for instance, to obtain proof
of the identity of the impression; or how the exemplification of
the record, made evidence by the law, should be better proof
than the original.  But we are relieved from disputing the
authority of the cases referred to by the Act of April 3d 1840,
§ 1 (Brightly's Purdon, p. 313, pl. 20), which provides expressly
that the certificate shall be *primâ facie* evidence without proof
of the seal.  This act was not referred to by the counsel, but the
court seems to have admitted the deed as an ancient instrument
accompanying the possession.  The testimony shows that the
deed came from the possession of Jane Knox, who, the witness
states, always claimed through her mother.  There was, without
passing upon this question, no error in receiving the deed in
evidence.

There is nothing in any of the assignments of error to the
charge of the judge.  He was right in submitting the question
of fact to the jury, whether Elizabeth Knox accepted the provi-
sions of her husband's will, informing them at the same time that
if she did, she was estopped from denying her husband's title.
There was nothing in her will which ratified the devise by her
husband to Jane C. Knox.  The reference to the part devised by
him was but a description, and she took pains to exclude a con-
clusion, by stating in connection with it, that she had never
relinquished her right to the land.  The court could not take the
case from the jury under all the evidence in the cause.  The
extract contained in the sixth assignment cannot be wrested from
its connection.  The next sentence, and the whole subsequent
part of the charge, shows that all the questions were fairly sub-
mitted to the jury with proper instructions.

The seventh assignment complains of the allowance of interest
on the legacy, on the ground that the legacy was contingent, and
not vested.  This is a clear mistake.  The cases cited are those
where the legacy did not pass until the time of payment, which
was made dependent upon some uncertain event.  For example:
" My executor shall pay to my grandson, John Moore, one hun-
dred pounds as soon as he arrives to be twenty-one years of age."
Here the gift itself is dependent upon the time and event which
controls the payment, and is, therefore, contingent: Moore *v.*
Smith, 9 Watts 403.  But in the case before us the testator made
a present and immediate bequest: " I give and devise to the

Presbyterian Church five hundred dollars, to be paid by the person who shall administer on my estate to the sessions," &c. The expression "to be paid by the person who shall administer," is nothing more than a direction as to the person to carry the bequest into execution, and such as the law itself would require, as she had appointed no executor. There is not the slightest cast of a contingency in the case.

　　　　　　　　　　The judgment is therefore affirmed.