Scott's Estate.

510

Argued October 2, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*William Watson Smith,* of *Smith, Buchanan, Scott & Gordon,* with him *Albert P. Weitzel,* for Ernest H. Myers, Jr., appellant.—Limitations are void unless they necessarily vest, if at all, within a life or lives in being, when the estate passes from the settlor, and twenty-one years, etc., afterwards: Rhodes's Est., 147 Pa. 227; Phila. v. Girard's Heirs, 45 Pa. 1.

If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate: Manderson v. Lukens, 23 Pa. 31; Ritter's Est., 190 Pa. 102; Neel's Est., 252 Pa. 394; Wheaton Coal Co. v. Harris, 288 Pa. 294; McCauley's Est., 257 Pa. 377.

Deferring the right of possession beyond the period prescribed in the rule against perpetuities will not prevent the vesting of an estate: Rhodes's Est., 147 Pa. 227; Bingaman's Est., 281 Pa. 497.

The direction to the trustee to distribute does not make the remainders contingent: Brown's Est., 289 Pa. 101; Little's App., 117 Pa. 14; Marshall's Est., 262 Pa. 145.

*Rose & Eichenauer* and *Smith, Buchanan, Scott & Gordon,* for Colonial Trust Company, appellant.

*John E. Winner,* for appellee.—The testator clearly meant that the persons who were to take the corpus of his estate should be living at the time fixed by him for the vesting and final distribution of his estate: Gerber's Est., 196 Pa. 366; Johnston's Est., 185 Pa. 179; Feeney's Est., 293 Pa. 273.

The validity of a limitation after the death of an unborn tenant for life depends upon whether the remainder so limited is vested or contingent: Ledwith v. Hurst, 284 Pa. 94; Gageby's Est., 293 Pa. 109; Coggin's App., 124 Pa. 10; Mulliken v. Earnshaw, 209 Pa. 226; Alburger's Est., 274 Pa. 15; Price's Est., 279 Pa. 511; Raleigh's Est., 206 Pa. 451; Frasier v. Gas & Water Co., 249 Pa. 570.

The estates in the remaindermen, being contingent, violate the rule aginst perpetuities: Gerber's Est., 196 Pa. 366; List v. Rodney, 83 Pa. 483; Phila. v. Girard's Heirs, 45 Pa. 1; Lilley's Est., 272 Pa. 143; Feeney's Est., 293 Pa. 273; Kountz's Est. (No. 1), 213 Pa. 390.

OPINION BY MR. JUSTICE SIMPSON, November 24, 1930:

The single question raised on these two appeals is, whether or not the residuary clauses of testator's will are void, because they violate the rule against perpetuities? The court below correctly decided that they did violate it.

It seems to be admitted, certainly it is clear, that the ultimate distribution under paragraph (c) of the will, hereinafter quoted, cannot be made until the death of the last surviving child of testator's son Carl, if he leaves children, though that last survivor may have been born after testator's death and survive more than 21 years after the death of Carl, and, indeed, of all those referred to in that paragraph. It necessarily follows, since the possibility of violation is the determinative factor (Lilley's Est., 272 Pa. 143; Linck v. Plankenhorn, 286 Pa. 319), that the rule against perpetuities (which declares that contingent gifts are void if they may not go into effect within a life or lives in being and twenty-one years thereafter), is violated by paragraph (c), unless the gift to the ultimate distributees specified in that paragraph was vested at testator's death. To this question, therefore, we at once address ourselves.

In the instant case, as in practically all others of like character, a great similarity exists between the case being argued and those cited on the one side and the other, and hence able counsel, as here, point to the similarities and dissimilarities as bearing out the view he is urging; but, "as we have said many times before [and now repeat as applicable to this vexed question also], precedents are of little value in the construction of wills, because, when used under dissimilar circumstances and with different contexts, the same words may express various intentions": Reiff v. Pepo, 290 Pa. 508, 516; French's Est., 292 Pa. 37, 42. Whenever the rule against perpetuities applies, it always operates to defeat the intention of the donor or testator (Lilley's Est., 272 Pa. 143); hence the true construction of a deed or will must

be ascertained without reference to the rule itself; though, in the rare instances, not applicable here, where two constructions are reasonably possible, if one will sustain the gift and the other will not, the former interpretation will be accepted. We shall, therefore, in the first instance, set forth the relevant provisions of the will, and state what we conceive to be their plain meaning. By taking this course, some, at least, of the apparent difficulties in the case will wholly disappear.

After giving his residuary estate to a named trustee, with a direction to pay the net income to testator's son, Carl, for life, and "if he has issue at the time of his death ......[to divide the income among them] until the death of all of the said children," testator then provides as follows: "(c) *"Upon the death of my son, Carl Myers Scott, and all of his children,* I direct that the said trust shall be terminated and the said Colonial Trust Company as *Trustee is hereby directed to distribute* the residue of my Estate, to the following brothers and sisters of my deceased wife, Ada Myers Scott, viz.: Ernest H. Myers, Jr., Irene M. Niemann and Emma Louise Myers, share and share alike. In case any of the said brothers and sisters of Ada Myers Scott should *then* be dead, then it is my Will that the surviving children of such deceased brother or sister of Ada Myers Scott, together with Emma Louise Myers, shall receive the share of such deceased brother or sister of Ada Myers Scott, share and share alike. In case, however, the said Emma Louise Myers should *at that time* be dead, without being married and without issue, then the said share of Emma Louise Myers shall be given to my sister, Grace S. Fraser."

It will be noticed at once, that the only gift to the remaindermen is in the direction to *"distribute* the residue of my estate," *"upon the death of my son Carl Myers Scott, and all of his children,"* to the brothers and sisters of his deceased wife, and in case any of them "should *then* be dead," to give it to the others specified. To this

language the rule stated in Moore v. Smith, 9 Watts 403, 407, applies. We there said, in an opinion written by Chief Justice GIBSON, that "The ruling principle in a case like this is, that where there is no separate and antecedent gift which is independent of the direction and time for payment, the legacy is contingent...... Where a gift is only implied from a direction to pay, it is necessarily inseparable from the direction, and must partake of its quality; insomuch that if the one is future and contingent, so must the other be." In the instant case, the direction is to "distribute the residue of my estate" to the persons named, and "there is no separate and antecedent gift" to any of them. Moore v. Smith has been cited and followed in King v. King, 1 W. & S. 205, 206; Bayard v. Atkins, 10 Pa. 15, 18; Seibert's App., 13 Pa. 500, 503; Bowman's App., 34 Pa. 19, 23; Duffey v. Presbyterian Congregation of Bellefonte, 48 Pa. 46, 52; Coggins's App., 124 Pa. 10, 32; Reiff's App., 124 Pa. 145, 151; Kountz's Est. (No. 1), 213 Pa. 390, 395; Rosengarten v. Ashton, 228 Pa. 389, 394; Sternbergh's Est., 250 Pa. 167, 171; Geissler v. Reading Trust Co., 257 Pa. 329, 334; Evans's Est. (No. 1), 264 Pa. 357, 360; Hildebrant's Est., 268 Pa. 132, 135; Lilley's Est., 272 Pa. 143, 150; Alburger's Est. (No. 2), 274 Pa. 15, 21, and Feeney's Est., 293 Pa. 273, 280.

The principle upon which those cases were decided, so early stated and so consistently followed, (in the absence of legislative action, of which there has been none), puts it beyond the realm of argument at this late day, especially as it is a rule of property upon which many titles probably depend. Hence, we need only briefly refer to the several authorities which, in the course of the ninety years since the opinion in Moore v. Smith was rendered, are supposed to qualify it in a way affecting the present testator's will. A study of these cases will show that none of them affects the principle upon which those already referred to were decided; but each of them is based on the conclusion that, from a consideration of

the entire will there being construed, it appeared that a vesting was intended at the death of testator, and hence effect was given to that conclusion, though, if the particular remainder clause had been standing alone, a different result might have been reached: McClure's App., 72 Pa. 414; Little's App., 117 Pa. 14; Smith's Est., 226 Pa. 304; Neel's Est., 252 Pa. 394; Rau's Est., 254 Pa. 464; Marshall's Est., 262 Pa. 145; Jennings's Est., 266 Pa. 60; Groninger's Est., 268 Pa. 184, and Brown's Est., 289 Pa. 101. In some of them it is said that, from a consideration of the entire will then being construed, it appeared that the payment to the ultimate distributees was postponed solely for the purpose of accommodating the estate, or for the payment of debts, or to meet some other burden first imposed, and not for the purpose of determining who should be the donee; and hence the gift there was held to be vested. This is but another way of saying that the ascertainment of the question of vesting is to be reached on a consideration of the entire will, as, of course, it always must be. In the present case, however, there is nothing in the will which affects the question of vesting, except paragraph (c) above quoted, and hence we conclude that the gift to the ultimate remaindermen is contingent and not vested.

A careful analysis of paragraph (c) compels the same conclusion. Assuming, without deciding, that Emma would get one-half and the surviving children of Ernest or Irene the other half, if that was the status when Carl's last surviving child died (a per capita distribution making the situation even more complex), it is clear that, under paragraph (c), the possibilities as to those who would take "upon the death of my [testator's] son......and all of his children" are as follows: If Ernest, Irene and Emma are all then alive they will share equally. If Ernest is then dead, but children of his survive, as do also Irene and Emma, then the surviving children will get one-sixth of the residuary estate, Irene will get two-sixths and Emma will get three-sixths. If Ernest is then

dead, leaving Irene and Emma, but no surviving children, Irene will get one-third of the residuary estate, and Emma will get two-thirds. If Irene is then dead, leaving surviving children, and Ernest and Emma are also alive at that time, then her surviving children will get one-sixth of the residuary estate, Ernest will get two-sixths and Emma will get three-sixths. If Irene is then dead leaving Ernest and Emma but no surviving children, then Ernest will get one-third and Emma two-thirds. If Ernest and Irene are both then dead and both leave surviving children, and Emma is still alive, then each class of the surviving children will get one-sixth and Emma will get four-sixths. If Ernest and Irene are both then dead, and only one leaves surviving children, and Emma is still alive, then the surviving children get one-sixth and Emma five-sixths. If Emma "at that time" is dead leaving surviving children, they get her one-third, but if she be then dead "without being married and without issue" her one-third goes to Grace S. Fraser, and another one-third goes to Ernest and Irene each, if they are then alive, or to their surviving children if they are then dead leaving children; or if one is then dead leaving no surviving children two-thirds goes to him or her or to his or her surviving children as the case may be. The gift to Grace S. Fraser does not take effect if Emma leaves a husband but no children; for, in that event, a gift to him is implied: Beilstein v. Beilstein, 194 Pa. 152; Lippincott's Est., 276 Pa. 283. If "at that time" all three are dead, and none of them leaves surviving children, an intestacy results. There are, therefore, at least twelve contingencies relating to those who will take on the death of Carl and his last surviving child, each independent of and not derived through any of the other possible classes of distributees, and, therefore, the gift to each class is necessarily contingent on the survivorship provided for.

In considering the whole will, therefore, it is clear that, since Carl's last surviving child might be unborn

at the time of testator's death and survive his father more than twenty-one years, the case is squarely within the decision in Feeney's Est., 293 Pa. 273, 283-4, where we said: "The validity of [a] limitation over after the death of [an] unborn tenant for life depends upon whether the remainder so limited is vested or contingent. If the remainder be vested in an ascertained person, or in a person who must be ascertained, if at all, within twenty-one years after the death of the parent of the unborn tenant, it is valid; but if it may remain contingent until the death of the unborn life tenant it is too remote...... In other words, a remainder cannot be limited to take effect upon a contingency, such as the death of a second life tenant more than twenty-one years after that of the first life tenant, if the second life tenant may be born subsequent to the death of testator, even though he would be in esse during the life of the first devisee." Here, since it cannot be known who will take the remainder estate until the death of Carl's last surviving child, who may have been born after the death of testator and survive Carl for more than twenty-one years, we can reach no other conclusion than that the gifts in remainder are not vested subject to be divested, but are contingent, that they violate the rule against perpetuities, and are void.

It is finally contended by appellants, upon the supposed authority of McCaskey's Est., 293 Pa. 497, that we should not now determine whether or not the rule is violated. The syllabus of that case correctly states our conclusion on this point, as applicable to the situation there appearing: "Where precedent gifts do not transgress the rule against perpetuities, and no right of distribution is alleged to presently exist in favor of those interested in remainder, the court will not consider the question of the validity of the latter gifts, unless it appears that the dominant purpose of the will was to tie up the entire estate beyond the time allowed by law." In that case the son's shares in the residue were given

upon spendthrift trusts, and provision was made for payments to the daughters out of principal, whenever necessary for their proper support. Our conclusion from the entire will was (page 508) that "testator's paramount purpose was to protect the shares given to his children, and the gifts in remainder were made simply because there had to be remainders, and he preferred to dispose of them by his will, rather than have them pass under the intestate laws." No such situation exists here, for no dominant purpose is shown why the life estates to Carl and his children should be sustained. Except in situations like McCaskey's Estate, it is not always easy to determine what was a testator's dominant purpose in so disposing of his estate as to violate the rule against perpetuities; but, in the instant case, we cannot say that the court below erred in deciding that testator's dead hand was interposed, despite the rule against perpetuities, simply for the purpose of attempting to control its disposition until after the death of Carl's last surviving child. When considering the scope and effect of a judicial opinion, the facts of the case must be constantly kept in mind (Levin v. Fourth St. Nat. Bank, 277 Pa. 350; Scaife v. McKee, 298 Pa. 33) ; by overlooking this, our decision in McCaskey's Est., supra, seems to be partially misunderstood. Hence we now add that we did not therein say anything which properly can be construed to mean that possession should not be given, in this class of cases as in all others, to those entitled thereto at the first time the question is properly raised, unless there is some valid reason, appearing in the deed or will, why its determination should be postponed.

The decree of the court below is affirmed, and each appeal is dismissed at the cost of the appellant therein.